UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| AMERAIR INDUSTRIES OF DELAWARE, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>INDUSTRIAL ACCESSORIES COMPANY, MICHAEL RAFTIS, and JOHN DOE'S 1-8,<br><br>    Defendants. | Civil Action No. 1:20-cv-01736-SDG |

## IAC'S MOTION TO EXCLUDE THE OPINION TESTIMONY OF ERIC SHIRK WITH MEMORANDUM OF LAW IN SUPPORT

On April 30, 2021, hours before the official close of the discovery period, Plaintiff Amerair Industries of Delaware, LLC ("Amerair") first disclosed its intent to rely on the expert testimony of Mr. Eric Shirk. (*See, e.g.*, ECF Nos. 82 & 83.) In a case involving claims of computer trespass, the use of expert testimony to opine on damages caused to a computer system would be unsurprising, even commonplace; except, Amerair's proffered expert offers no such testimony. Instead, Mr. Shirk offers a completely different and entirely unhelpful opinion: that, based on his review of the documents provided to him, Defendant Michael Raftis's conduct is "suspicious" and not "consistent" with Raftis's explanation for his conduct, i.e., that he accessed Amerair's systems as part of a "fraud and misconduct

1

investigation." (ECF No. 93-5 at 7:4-8:6, 9:21-10:1, 10:8-11:5. *See also* ECF No. 82-1 at 8.)[1]  In other words, Mr. Shirk simply reviewed some of the documentary discovery exchanged this case and offered his personal conclusions regarding the believability of Raftis's professed motivations, something Mr. Shirk admits any literate juror is capable of doing. (ECF No. 93-5 at 62:14-19.)  Not only is such testimony not helpful to the jury—it *supplants* the role of the jury. IAC therefore moves, pursuant to Federal Rule of Civil Procedure 702, to exclude the opinions of Mr. Shirk in their entirety. In support of its motion, IAC shows the Court the following:

## I.  BACKGROUND

Mr. Shirk purports to be an expert in "digital forensics analysis, as well as cyber investigations." (*Id.* at 6:14-7:3.) He is not trained in law or psychology. (*Id.* at 14:7-15.)

Mr. Shirk did not conduct a damages analysis of Amerair's system. (*Id.* at 9:1-4, 45:17-46:7.) Amerair did not retain Mr. Shirk to determine whether any data had been lost or deleted, and Mr. Shirk did not perform any repair, restoration, or

---

[1] ECF No. 93-5 is the transcript of the deposition of Mr. Shirk on June 4, 2021, taken pursuant to this Court's order of May 6, 2021. (*See* ECF No. 84.) ECF No. 82-1 is a portion of Mr. Shirk's expert report, which Amerair filed with the Court on the last day of discovery.

remediation measures on Amerair's systems. (*Id.* at 9:5-20, 46:15-47:3.) Mr. Shirk did not perform any forensic analysis of any telephones, tablets, computers, or e-mail systems apart from reviewing the access logs provided by Amerair and its counsel; he did not create or extract any data from any electronic device or forensically saved material; he cannot shed any light on what, if anything, was reviewed by Raftis when accessing Amerair's system, how long he accessed any such documents, or how (or even if) he used any particular document (including, without limitation, whether he provided any document to IAC). (*Id.* at 15:5-16:16, 25:13-26:7, 30:20-31:8, 54:14-19.)

> Instead, Mr. Shirk offers a single opinion, as follows:
>
> Q. All right. I've reviewed your report in this case. I don't see a section that sets forth, quote, "opinions". I see a section that sets forth, quote, "conclusions and recommendations". The, quote, "conclusion" that I note in your report reads as follows:
> (Reading) "Based on the analysis performed as of the date of this report against the materials noted here within, it is clear to BDO that the discovered facts do not support Raftis' claim, fraud and misconduct investigation purposes, but are more consistent with anti-competitive business practices against Amerair shortly before and during his employment with IAC."
> Is that what you are professing to opine in this case?
>
> A. Correct.
>
> * * *
>
> Q. All right.

> Now, with respect to your opinions in this case, are there any other opinions, other than the one that I articulated to you from your report that you are intending to opine on in this case?
>
> A.  Not at this time.

(*Id.* at 7:4-20, 9:21-10:1.  *See also id.* at 21:16-19.)

Mr. Shirk bases this "conclusion" on his review of documents provided by Amerair's counsel, including purported access logs and responses to written discovery requests concerning conduct to which Mr. Raftis has already admitted. (*Id.* at 24:4-24, 26:22-27:8, 39:9-22.)  In general, Mr. Shirk admitted none of these documents require any specialized expertise to read and any juror could read them to draw their own conclusions regarding Raftis's motivations.[2]  (*Id.* at 27:21-29:14. 31:22-33:11, 33:24-36:1, 36:18-23, 41:3-42:15, 62:14-19.)   Mr. Shirk also had limited conversations with Amerair and its counsel regarding the logs, and Mr. Shirk admits his report does not add anything to their interpretation of the logs aside from the aforementioned opinions.  (*Id.* at 18:11-21:24, 22:4-23:14.)   Additionally, despite purporting to opine on "inconsistencies" between Raftis's admitted conduct

---

[2] Mr. Shirk contends expertise is required to understand "what an IP address is," while admitting resources exist to define it and further admitting he does not know whether Raftis, his counsel, or IAC's counsel have such expertise (despite using the term in their written discovery responses).  (*Id.* at 28:12-29:18, 34:8-35:8.)  There are also two legal documents, which are not covered by Mr. Shirk's own professed expertise. (*Id.* at 14:7-10, 33:12-22, 36:2-11.)

4

and his explanations for the same, Mr. Shirk admits he is not aware of—and was not presented with—such explanations or even with information concerning Raftis's day-to-day business activities during the relevant time period. (*Id.* at 23:23-24:3, 40:15-41:1, 48:20-25, 56:7-19.)

Amerair's counsel reviewed and made changes to Mr. Shirk's report prior to finalization. (*Id.* at 57:4-14.) Mr. Shirk is not aware of whether Amerair's counsel has any expertise in cyber investigations or forensic analyses. (*Id.* at 57:15-20.)

## II.   LEGAL STANDARD

Under Federal Rule of Evidence 702, "district courts [must] perform the critical 'gatekeeping' function concerning the admissibility of expert scientific evidence." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (*en banc*). (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)). To be admissible, the expert testimony must satisfy the following criteria: (1) the expert must be sufficiently qualified to address the intended subject matters of his testimony; (2) the expert must use a methodology that is "sufficiently reliable" under *Daubert*; and (3) the expert's testimony must "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005). The proffering party bears the burden of showing each

criteria is satisfied by the preponderance of the evidence. *Id.* at 1292. Even under *Daubert's* "liberal admission" standard, "[e]xpert testimony is inadmissible if it is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *In re Wholesale Grocery Prods. Antitrust Litig.*, 946 F.3d 995, 1001 (8th Cir. 2019).

## III.  ARGUMENT

Mr. Shirk's testimony fails all three elements for admissible expert opinions. His opinions regarding purported inconsistencies between Raftis's conduct and his professed motivations for the same are simply not helpful to the trier of fact. Additionally, Mr. Shirk is not qualified to testify on Raftis's state of mind and, regardless, does not apply reliable methods to reach his conclusion.

First, simply interpreting the documentary evidence when no specialized expertise is required to do so is not helpful to the jury. In the context of Rule 702, "helpful" means the expert testimony provides insights "beyond the understanding and experience of the average citizen" on issues relevant to the case. *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985). Mr. Shirk admits, however, his opinion does not offer any inference that average jurors could not draw themselves based upon their independent review of the same documents:

> Q. Okay. Anyone who can actually read, and understand a calendar, they can draw their own conclusions as to Raftis's motivations for conduct that is based on documents that anyone can read; correct?

6

A. True.

(ECF No. 93-5 at 62:14-19.)  In this case, the key documents at issue do not require special expertise to interpret.  (*Id.* 27:21-29:14. 31:22-33:11, 33:24-36:1, 36:18-23, 41:3-42:15.)  Accordingly, Mr. Shirk's testimony merely supplants rather than assists the jury, precluding the admission of his testimony.[3]

Additionally, even if—and contrary to Mr. Shirk's admissions—his inferences required specialized expertise to draw, Mr. Shirk unequivocally lacks such expertise.  To be qualified, Mr. Shirk must have sufficient "knowledge, skill, experience, training, or education" to reliably opine on the subject matters at issue.  *Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1193 (11th Cir. 2010) (citing Fed. R. Evid. 702).  Despite that Mr. Shirk's professed expertise is in "digital forensics analysis" and "cyber investigations," he effectively disclaimed any opinions within those fields.  (*See* ECF No. 93-5 at 6:14-7:3, 9:1-20, 15:5-16:16, 25:13-26:7, 30:20-31:8, 45:17-46:7, 46:15-47:3, 54:14-19.)  Meanwhile, the opinion Mr. Shirk does offer—an evaluation of Raftis's professed motivations—is not a proper subject for expert testimony *at all*:

---

[3] Additionally, the ubiquity of the term "IP address" in the information age belies Mr. Shirk's assertion that his testimony is needed to understand the term, particularly when the concept is—as Mr. Shirk admits—not vastly different from physical addresses and when other resources exist to define the term.  (*See id.* at 34:23-35:8, 63:16-23.)

7

> Expert testimony on the intent, motives, or states of mind of corporations, regulatory agencies and others have no basis in any relevant body of know ledge or expertise. [Cit. omitted.] The testimony is improper also because it describes lay matters which a jury is capable of understanding and deciding without the expert's help.

*Cason v. C.R. Bard, Inc.*, 2015 WL 9913809, at *13 (N.D. Ga. Feb. 9, 2015) (Shoob, J.) (quotations omitted). *See Williams v. Ethicon*, 2021 WL 857747, at *7 (N.D. Ga. Mar. 8, 2021) (Grimberg, J.) (granting motion to exclude expert opinions on "Defendants' knowledge, state of mind, or corporate conduct"). Regardless, and even to the extent subjective states of mind are ever proper subject matters for expert evaluation, any such analysis would more properly belong to fields like psychology, in which Mr. Shirk has no expertise. (*See id*. at 14:7-15.)

Last, Mr. Shirk's testimony is simply not reliable because, despite professing to identify inconsistencies between Raftis's conduct and his explanations for the same, *Mr. Shirk did not even familiarize himself with Raftis's explanations prior to rendering his opinions*. See *Frazier*, 387 F.3d at 1260-62 (explaining the "reliability" element, which requires the opinion to be based on valid scientific principles, reasoning, and methodologies, which the expert must properly apply to the facts to reach his stated opinions). *See also Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1305-07 (11th Cir. 2004) (*quoting Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593-94 (1993)) (setting forth the four factors for

8

"reliability," each of which must be satisfied). In addition to failing to satisfy any of the four factors for reliable expert testimony from *Daubert*, Mr. Shirk's testimony fails the more basic standard of reasonable due diligence in gathering and assessing pertinent information. If Mr. Shirk intended to opine about the veracity of Raftis's explanations for his conduct, Mr. Shirk should have, at the very least, familiarized himself with those explanations beforehand. He did not. (ECF No. 93-5 at 23:23-24:3, 40:15-41:1, 48:20-25, 56:7-19.) A jury, however, will be presented with such information (if a trial is even necessary), rendering Mr. Shirk's testimony fundamentally unreliable and unhelpful at best, and outright misleading at worst.

## IV.   CONCLUSION

Amerair proffered an untimely expert at the eleventh hour of discovery. Now that Amerair's expert has been deposed, it is clear Amerair did not even make a perfunctory attempt to satisfy the requirements of Rule 702, wasting the time and resources of all involved. Mr. Shirk's opinion should be excluded.

Respectfully submitted, this 8th of July, 2021.

/s/ *Brian M. Underwood, Jr.*
Christopher P. Galanek
Georgia Bar No. 282390
Chris.Galanek@bclplaw.com
Brian M. Underwood, Jr.
Georgia Bar No. 804091
brian.underwood@bclplaw.com

>**BRYAN CAVE LEIGHTON**
>**PAISNER LLP**
>One Atlantic Center, Fourteenth Floor
>1201 West Peachtree Street, N.W.
>Atlanta, Georgia 30309
>Telephone: 404-572-6600
>
>*Attorneys for IAC*

## LOCAL RULE 7.1(D) CERTIFICATION OF COMPLIANCE

I hereby certify that the foregoing has been prepared with Times New Roman, 14 point font in accordance with L.R. 5.1B, N.D. Ga.

This 8th day of July, 2021.

>*/s/ Brian M. Underwood, Jr.*
>Brian M. Underwood, Jr.
>Ga. Bar No. 804091

## CERTIFICATE OF SERVICE

I hereby certify that, on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send email notification of such filing to all counsel of record.

This 8th day of July, 2021.

>*/s/ Brian M. Underwood, Jr.*
>Brian M. Underwood, Jr.
>Ga. Bar No. 804091