## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

AMERAIR INDUSTRIES OF DELAWARE, LLC,

      Plaintiff,

            v.

INDUSTRIAL ACCESSORIES COMPANY, MICHAEL RAFTIS, and JOHN DOE'S 1-8,
      Defendants.

Civil Action No.
1:20-cv-01736-SDG

## <u>OPINION AND ORDER</u>

This matter is before the Court on Plaintiff Amerair Industries of Delaware, LLC's (Amerair) and Defendants Industrial Accessories Company's (IAC) and Michael Raftis's cross-motions for summary judgment [ECF 92; ECF 94; ECF 100]. Also pending before the Court are IAC's Motion to Exclude the Opinion Testimony of Eric Shirk [ECF 101] and IAC's Motion to Strike [ECF 107]. After careful consideration of the parties' briefs and with the benefit of oral argument, IAC's and Raftis's summary judgment motions [ECF 92; ECF 100] are **GRANTED.** Amerair's summary judgment motion [ECF 94] is **DENIED**. The remaining non-dispositive motions [ECF 101; ECF 107] are **DENIED AS MOOT**.

This is a tort action premised upon Amerair's loss—to IAC—of its bid on a contract, which Amerair alleges is the result of Raftis's unauthorized access of its

computer systems while he worked for IAC.[1] Amerair's theory of the case is that Raftis had access to Amerair's system, so he must have misappropriated Amerair's emails, gleaned bid-determinative information, and used it for IAC's benefit. As Amerair's corporate representative took care to explain at deposition, "[I]f you played the game of gin rummy . . . the odds of winning are about 50/50, 40/60. But when somebody is looking at your cards, you win [one] hundred percent of the time."[2] After all, "when you can see the other people's playing cards, you can always win the hand."[3] True enough. But the fundamental problem with Amerair's theory at summary judgment—now that discovery has closed and the parties have laid their cards on the table—is that there is not an iota of evidence to back up this theory. It appears that Amerair has overplayed its hand.

---

[1]   *See generally* ECF 17.

[2]   ECF 93-1, at 24.

[3]   ECF 100-1 (Raftis's SUMF), ¶ 42.

## I.      Background[4]

On July 1, 2010, Raftis, an Amerair employee, became an equal, one-third partner in the company, joining Robert Labbe and a third partner.[5] After he became a partner, Raftis worked as Amerair's employee until 2019. For reasons unknown, a business divorce of sorts ensured, and Raftis sought employment elsewhere. IAC formally offered Raftis a position as director of sales on April 11, 2019, and Raftis began working for IAC on May 1.[6] Curiously, however, Raftis remained "a member and owner in Amerair."[7]

---

[4]   The Court adopts the facts for which there is evidentiary support from Amerair's and Raftis's statements of undisputed facts appended to their summary judgment motions. *Hampton v. Atzert*, 590 F. App'x. 942, 944 (11th Cir. 2014) ("[A] district court will accept each of the movant's facts admitted at summary judgment unless the nonmovant directly refutes these facts with concise responses."). *See also* NDGa, LR 56.1 (A response to the movant's statement of undisputed facts "shall contain individually numbered, concise, nonargumentative responses corresponding to each of the movant's numbered undisputed material facts."); *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) (filing the responsive materials required by Local Rule 56.1 is the "only permissible way . . . to establish a genuine issue of material fact" in response to the moving party's assertion of undisputed facts); *id.* at 1269 (stating that, where the non-movant fails to comply with Local Rule 56.1, the district court must nevertheless "review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact").

[5]   ECF 100-1, ¶ 1.

[6]   *Id.* ¶¶ 12–13.

[7]   *Id.* ¶ 14.

While he was employed at Amerair, Raftis had access to its email accounts and passwords; in fact, he created them as "administrator" of Amerair's information technology and systems.[8] However, on April 10, 2019, in preparation for Raftis's resignation, Labbe instructed Raftis in an email to "be sure not to discard any . . . physical documents that are the property of Amerair . . . [and] return all software . . . given to you and created during your course of employment from June 1, 2006 to April 30, 2019."[9] Labbe maintains that his April 10 email "was good enough to let [Raftis] know he shouldn't have done anything" to access or alter Amerair's systems moving forward, though Amerair did not take any steps to restrict Raftis's access, nor did Amerair contact its third-party systems provider to remove Raftis as the point of contact.[10] Amerair did not "terminate [Raftis's] access" to his Amerair email account or change his password until August 7.[11]

Meanwhile, at some point in 2019, SDI began soliciting bids for its Sinton, Texas project.[12] Amerair was among five companies bidding on the project, which

---

8   *Id.* ¶¶ 20–24.

9   *Id.* ¶ 26 (quoting ECF 82-1, at 46).

10   *Id.* ¶¶ 27, 30.

11   *Id.* ¶¶ 31–33.

12   *Id.* ¶ 15; ECF 92-2 (IAC's SUMF), ¶ 4.

required its employees to communicate with SDI personnel.[13] By March 26, while he was still employed at Amerair, Raftis had created a "projects" email account and set it and other email accounts up to forward copies of emails to his own Amerair account.[14] Unbeknownst to Amerair and IAC, Raftis continued to access Amerair's email systems after his employment with Amerair ended.[15] Raftis asserts that he accessed these emails in order to monitor Labbe's conduct, including certain financial transactions that involved Amerair, which Raftis believed were fraudulently conducted with the intent to devalue his ownership interest in the company.[16]

Raftis last accessed Amerair's computer system on either August 20 or 21, 2019, though by that point he could only access Amerair's "projects" email account.[17] Amerair cannot confirm whether it had emailed a draft bid on STI's Sinton project by August 21 such that it might have been forwarded to the "projects" account, nor can it definitively say whether Raftis saw any of Amerair's

---

[13]   ECF 92-2, ¶ 6; ECF 100-1, ¶ 15.

[14]   ECF 100-1, ¶ 17.

[15]   ECF 92-2, ¶ 19.

[16]   *Id.* ¶¶ 21–22; ECF 100-1, ¶ 19.

[17]   ECF 92-2, ¶¶ 44–45; ECF 100-1, ¶ 34.

pricing information.[18] Moreover, Amerair's then-existing draft bid contained no pricing information.[19]

Amerair submitted its initial bid for the SDI Sinton project on August 31 and its final revised bid on September 30.[20] SDI never considered Amerair as a finalist for its Sinton project, and eventually awarded the project to IAC.[21] Raftis further asserts that none of the information he accessed pertained to IAC's business interests, let alone its bid on SDI's Sinton project, and Amerair has not established a dispute of material fact on this point.[22] It is also uncontroverted that Raftis accessed Amerair's systems on his own initiative, not at IAC's behest.[23] Nevertheless, after losing the bid, Amerair filed the instant lawsuit. Amerair did not know Raftis had accessed its system prior to this litigation.[24]

On April 23, 2020, Amerair brought suit against Defendants John Does 1–10, asserting three causes of action: (1) violation of the Computer Fraud and Abuse

---

[18]   ECF 100-1, ¶¶ 43–46, 64.

[19]   ECF 92-2, ¶ 9.

[20]   *Id.* ¶ 52.

[21]   ECF 92-4, at 2.

[22]   *Id.* ¶ 34.

[23]   ECF 92-2, ¶ 34.

[24]   *Id.* ¶ 35.

Act, 18 U.S.C. § 1030 (CFAA); (2) violation of Georgia's Computer Systems Protection Act, O.C.G.A. § 16-9-90 (GCSPA); and (3) conversion.[25] The Court granted Amerair leave to serve subpoenas on May 19. On June 23, Amerair amended its initial complaint to add Defendants IAC and Raftis, as well as a fourth claim for tortious interference with business relations.[26]

The parties took discovery, and on July 1, 2021, IAC moved for summary judgment.[27] Amerair cross-moved on July 5,[28] and Raftis cross-moved on July 6.[29] On July 8, IAC moved to exclude the testimony of Erick Shirk, Amerair's purported expert, and Raftis joined the motion the next day.[30] On July 26, IAC moved to strike certain exhibits and testimony Amerair relied on in its motion for summary judgment.[31] On March 15, 2022, the Court heard oral argument.[32]

---

[25] ECF 1.

[26] ECF 17.

[27] ECF 92.

[28] ECF 94.

[29] ECF 100.

[30] ECF 101; ECF 102.

[31] ECF 107.

[32] ECF 124.

## II.     Discussion

### A.     Summary Judgment

IAC and Raftis separately move for summary judgment on each of Amerair's claims.[33] Amerair seeks summary judgment on its CFAA, GCSPA, and conversion claims.[34]

#### 1.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary

---

[33]   ECF 92; ECF 100.

[34]   ECF 94.

judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Ent't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### 2.    IAC's Summary Judgment Motion

In its summary judgment motion, IAC argues that Amerair's claims fail because Amerair cannot impute any of Raftis's conduct to IAC, demonstrate a cognizable loss under the CFAA, identify any property that IAC converted, or establish a dispute of material fact regarding the causation element of its tortious

interference claim.[35] For its part, Amerair responds (and asserts in its summary judgment motion) that IAC, as Raftis's principal, is liable for Raftis's conduct; Amerair's alleged losses qualify under the CFAA; and there is, at least, a dispute of material fact with respect to its remaining claims.

The Court need not reach the merits of each of IAC's and Amerair's arguments. IAC contends—and Amerair does not dispute—that IAC's liability can only be vicarious, as Raftis is the only named party who may be held directly liable for the alleged conduct.[36] Indeed, a close examination of each of Amerair's claims reveals that they are entirely premised upon Raftis's actions, and they only inculpate IAC via the doctrine of *respondeat superior*.

Under Georgia law, "two elements are required before an employer can be held liable under respondeat superior for the actions of an employee—not only must the employee be acting within the scope of employment, but the actions must also be in furtherance of the employer's business." *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612, 616 (2003).

> It must appear that at the time of the injury the servant was engaged in the master's business and not upon some private and personal matter of his own; that is, the injury must have been inflicted in the course of the servant's

---

[35]   *See generally id.*

[36]   ECF 92-1, at 6.

> employment. Indeed, the test is not that the act of the servant was done during the existence of the employment, but whether the servant was at that time serving the master.

*Wood v. B & S Enters., Inc.*, 314 Ga. App. 128, 130 (2012) (cleaned up) (citations omitted).

This standard is a forgiving one: "It makes no difference that the [employer] did not authorize, or even know of the [employee's] act . . . or even if he disapproved of or forbade it, he is equally liable if the act be done in the course of his [employee's] employment." *Anthony v. Am. Gen. Fin. Servs., Inc.*, 287 Ga. 448, 450 (2010) (citation omitted). That said, and germane to this case, "[i]f a tort is committed by an employee not by reason of the employment, but because of matters disconnected therewith, the employer is not liable." *Drury v. Harris Ventures, Inc.*, 302 Ga. App. 545, 546 (2010) (citation omitted); *accord Piedmont Hosp.*, 276 Ga. at 614. And summary judgment is warranted "where the evidence and all reasonable inferences drawn therefrom show that the employee was not engaged in furtherance of the employer's business, but was on a private enterprise of the employee's own." *Chorey, Taylor & Feil, P.C. v. Clark*, 273 Ga. 143, 144–145 (2000).

Thus, whether Raftis accessed Amerair's systems for IAC is the principal question when it comes to establishing respondeat superior liability. Counter to IAC's argument, Raftis need not have been demonstrably "called to duty" by IAC,

nor need he have "acted at IAC's direction nor informed IAC of what he was doing," though an absence of any facts to the contrary strengthens IAC's case.[37] *Drury*, 302 Ga. App. at 546. However, that Amerair "cannot point to any evidence that Raftis's actions were for IAC's benefit or that IAC received any benefit therefrom" is dispositive at summary judgment.[38] Raftis asserts that his was a solo enterprise: He alone accessed Amerair's system to keep tabs on Labbe out of concern for the value of his individual and personal ownership interest in Amerair.[39] Amerair contends that Raftis "was obtaining information on . . . Amerair . . . while on the business of . . . IAC, during the same time frame and at the same locations as when he was traveling and talking with [IAC and SDI personnel]." But without evidence that Raftis accessed Amerair's system for IAC's benefit, let alone to contradict Raftis's stated reason, the Court cannot credit Amerair's speculation.

Amerair did not, for example, compare its bid and IAC's bid for SDI's Sinton project in an effort to point to information Raftis might have stolen from Amerair and leveraged to IAC's benefit, nor has Amerair identified any facts from which a

---

[37]   ECF 92-1, at 8–9.

[38]   *Id.* at 10.

[39]   ECF 100-1, ¶ 19; ECF 92-2, ¶¶ 21–22.

jury could reasonably infer that Raftis viewed information related to Amerair's Sinton project bid. Amerair's allegations that Raftis was IAC's agent to submit the SDI bid, that his "duties [at IAC] included seeking out potential opportunities to sell IAC's equipment" and "obtain[ing] information on competitive bidders," or even that IAC "ratified Raftis'[s] conduct in working on and obtaining the SDI bid," if true, do not satisfy the elements of respondeat superior absent some evidence that Raftis accessed Amerair's systems for IAC's benefit.[40] The servant generally serves the master, but the Court will not assume as much without the proper evidentiary showing. *Piedmont Hosp.*, 276 Ga. at 615–16 ("[S]imply because a tortious act occurs during the time of employment is not dispositive . . . .").

Accordingly, and for the additional reasons discussed below, Amerair's summary judgment motion is denied as to IAC's liability on Amerair's CFAA,

---

[40]  ECF 104, at 2–4. As IAC correctly notes, at least one court in this district has called into question whether the CFAA permits the application of respondeat superior at all. *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1343–44 (N.D. Ga. 2017) ("Even if [the plaintiff] had alleged sufficient facts to show that [the employer] directed or induced [the employee] to act, the CFAA states that the person who has suffered damage or loss by a violation of the CFAA may maintain a civil action against the 'violator.' [The plaintiff] has alleged that [the employee] was the individual who acted, or was the violator, not [the employer]."). The Court need not address this question for purposes of this Order.

GCSPA, and conversion claims,[41] and IAC's summary judgment motion is granted as to each of Amerair's claims.[42]

### 3.    Raftis's Summary Judgment Motion

Regarding Raftis, Amerair both moves for summary judgment and opposes Raftis's cross-motion on the same three grounds: (1) concerning the CFAA, that Raftis exceeded his authorized access as defined by the Supreme Court in *Van Buren v. United States*, 593 U.S. ---, 141 S. Ct. 1648 (2021), and Amerair suffered qualifying damages in excess of $5,000; (2) that Raftis violated the GCPSA by committing "Computer Trespass"; and (3) that Raftis converted Amerair's emails by forwarding them to the "projects" mailbox and deleting some.[43] In defense, Raftis contends that "Amerair must show it placed a restriction on 'entering a part of the system to which a computer user lacks access privileges,'"[44] and that Amerair did not suffer qualifying damages.[45] Raftis further argues that Amerair's

---

[41]    ECF 94.

[42]    ECF 92.

[43]    *See generally* ECF 94; ECF 105.

[44]    ECF 108, at 4.

[45]    *Id.* at 8–11.

GCPSA proof cannot satisfy the statute's scienter or damages elements,[46] and its conversion claim is similarly incapable of proof.[47]

Raftis moves for summary judgment on all of Amerair's claims, too.[48] In his motion, he argues that Amerair fails to allege proper damages,[49] and that Amerair's remaining tort claims are preempted,[50] or fail on their own merits,[51] and are due to be dismissed in either case. Because Raftis's offensive arguments are determinative, the Court discusses each, in turn.

> ### i.   Amerair Has Not Established a Qualifying Loss Under the CFAA, so the Court Need Not Apply *Van Buren*.

The parties dispute the extent to which Raftis's access of Amerair's systems was authorized. Raftis encourages the Court to read the CFAA with a "gates-up-or-down" approach, pursuant to *Van Buren*. As the argument goes, "[o]ne either can or cannot access a computer system, and one either can or cannot access certain areas within the system."[52] *Van Buren*, 141 S. Ct. at 1649. Because Raftis could

---

[46]   *Id.* at 11–13.

[47]   *Id.* at 14–16.

[48]   ECF 100.

[49]   ECF 100-2, at 4–16.

[50]   *Id.* at 16–19.

[51]   *Id.* at 19–24.

[52]   ECF 100-2, at 5.

access Amerair's email system, *i.e.*, Amerair neither had a policy purporting to limit Raftis's access of its systems nor changed Raftis's password to the "projects" email account until some point after his employment ended, he cannot be liable under the CFAA.[53] In other words, it was incumbent on Amerair to have taken some action to remove Raftis's ability to access its systems or restrict the scope of his access to certain areas within its systems.[54] Amerair disagrees and argues by analogy: "[I]f a person gives a house key to his neighbor to check on the house . . . for the weekend, there is certainly no *authorization* for the neighbor to search the house or go through the drawers."[55] More on the nose, Amerair insists that Raftis was never authorized to create the "projects" email account, fashion back-end permissions to forward emails from other accounts to the "projects" account, or to "read, scroll through, copy, forward, delete, empty, or filter" Amerair's emails.[56]

The Court acknowledges Amerair's commonsense argument and finds that Amerair has established an issue of material fact as to whether and to what extent Raftis was authorized to access Amerair's systems—especially after his

---

[53]   *Id.* at 5–10.

[54]   *Id.* at 10–14.

[55]   ECF 105, at 4.

[56]   *Id.* at 2, 6.

employment had ended and Labbe issued his emailed instruction.[57] Indeed, that Raftis remains part-owner of Amerair makes the extent of his authority to access its systems exceedingly opaque. However, the Court need not pass on *Van Buren*'s application to these facts. Amerair's articulated loss controls the resolution of its CFAA claim.

Raftis argues that Amerair failed to offer any evidence of loss cognizable under the CFAA sufficient to raise the claim to a jury.[58] Amerair's best argument in response comes from its cross-motion for summary judgment: "Amerair hired counsel and IT expertise to discover the source of the accesses, assess the damage done, deal with prevention of further accesses, and minimize harm therefrom," resulting in expenditures in excess of $143,000.[59] Amerair alleges it has "also incurred losses of $5 Million in lost profits and overhead, as well as loss in salable value of $ 12.9 Million, all attributable to Raftis'[s] misconduct . . . ."[60] Raftis's argument prevails.

---

[57] *Id.* ¶ 26 (quoting ECF 82-1, at 46).

[58] ECF 100-2, at 14. IAC joins this argument and puts a finer point on it: "Amerair identifies no loss cognizable under the CFAA, and certainly none that meets the CFAA's $5,000 jurisdictional threshold" [ECF 92-1, at 4, 12–15].

[59] ECF 94-2, at 5.

[60] *Id.* at 7.

The CFAA "permits an action only if the plaintiff incurs a minimum 'loss' of $5,000 as a result of the defendants' violation of the CFAA." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1173 (11th Cir. 2017) (citing 18 U.S.C. § 1030(c)(4)(A)(i)(I)).

> [T]he term "loss" means any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offenses, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.
>
> . . . .
>
> The plain language of the statutory definition includes two separate types of loss: (1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service.

*Id.* at 1173–74. Put plainly, "loss" includes the direct costs of responding to the violation, and consequential damages resulting from any interruption of service.

Amerair has not offered any evidence that Raftis's actions caused it to experience an interruption of service.[61] Absent such a showing, Amerair is precluded from recovering consequential damages, including those it attributes to losing the SDI Sinton project contract, related lost profits, or any loss in Amerair's salable value. *Id.*

Regarding proof of any other loss, Amerair offers only its own redacted legal invoices for fees and costs.[62] These are not qualifying losses under the CFAA. *See Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1071–72 (D. Ariz. 2015) (citations omitted) ("[L]itigation expenses . . . are not a cognizable loss under the CFAA."); *Brooks v. AM Resorts, LLC*, 954 F. Supp. 2d 331, 338 (E.D. Pa. 2013) ("[L]itigation costs are not a compensable loss under the CFAA because they are not related to investigating or remedying damage to the computer."); *Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D.R.I. 2006) ("[A]s a matter of law, the costs of litigation cannot be counted towards the $5,000 statutory threshold."); *Padmanabhan v. Healey*, 159 F. Supp. 3d 220, 224 (D. Mass. 2016) (concluding that the "consulting costs, legal fees and professional injuries claimed by plaintiff" did not qualify as losses under

---

[61]  In fact, Eric Shirk, Amerair's own expert witness, testified that nothing indicated that Amerair experienced an interruption in email service or other service to its systems as a result of Raftis's actions [ECF 93-5, at 14].

[62]  ECF 94-2, at 5; ECF 94-9.

the CFAA, and explaining that "nothing in the statute suggests that the alleged loss or costs can be for matters unrelated to the computer"), *aff'd*, No. 16-1159, 2017 WL 3404402 (1st Cir. Jan. 4, 2017); *Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. 10-12043-GAO, 2012 WL 1065578, at *24 (D. Mass. Mar. 27, 2012) (finding legal fees were not a loss under the CFAA because they were not "directly attributable" to the offender's access to a computer).

Even if litigation-related expenses were qualifying losses under the CFAA, Amerair's losses would not qualify for two additional reasons. First, regarding costs related to Amerair's expert, the uncontroverted evidence demonstrates he was retained to "opine on . . . the veracity of . . . Raftis'[s] explanation for his admitted conduct," not "conduct a damages assessment with respect to the Amerair computer system," "restore any data that had been deleted," or "restore any part of the system."[63] Second, regarding the fees related to retaining counsel in order to investigate and determine that Raftis had accessed its systems, Amerair failed to provide any evidence to establish how much it spent to initiate the John Doe lawsuit, organize and serve subpoenas, and identify Raftis from the many IP addresses that accessed Amerair's systems during the SDI Sinton project bid;

---

[63]   ECF 93-5, at 4.

Amerair only provided redacted invoices, which are as good as blank pages for this purpose. Because Amerair failed to establish a disputed issue of material fact on this point, the claim fails on its merits, even if such fees and costs could be cognizable losses under the CFAA.

Amerair's summary judgment motion is therefore denied as it pertains to its CFAA claim. The Court grants Raftis's summary judgment motion on Amerair's CFAA claim. IAC is further entitled to summary judgment on this ground.

### ii.   Amerair's State Law Tort Law Claims Are Preempted.

Raftis argues that Amerair's state tort law claims are preempted by the Georgia Trade Secrets Acts (GTSA). Amerair responds—without citation to authority—that "[t]he operative issue is *not* whether [Raftis's actions] included trade secret information, but whether Raftis exceeded his authorization in taking the . . . actions"[64] to acquire Amerair's "valuable, private, confidential, competitive, business information."[65] At oral argument, Amerair insisted that its allegedly compromised information does not constitute trade secrets, so the GTSA should not preempt its other state tort law claims. Amerair advances a losing argument.

---

[64]   ECF 105, at 10 (emphasis in original).

[65]   ECF 17, ¶¶ 29, 31.

> ### a. The GTSA Preserves a Single Tort Cause of Action for Misappropriation of Trade Secrets.

The GTSA "supersede[s] conflicting tort, restitutionary, and other laws of [the State of Georgia] providing civil remedies for [the] misappropriation of a trade secret." O.C.G.A. § 10-1-767(a). *See Opteum Fin. Servs., LLC v. Spain*, 406 F. Supp. 2d 1378, 1380 (N.D. Ga. 2005) (citations omitted) ("The GTSA preserves a single tort cause of action under state law for misappropriation and eliminates other state causes of action founded on allegations of trade secret misappropriation.") (determining on a motion for judgment on the pleadings that the GTSA superseded the plaintiff's common law claims, despite the unresolved issue of whether the disputed information were trade secrets). And though Amerair does not plead a violation of the GTSA, it cannot dodge the GTSA's preemptive effect: "[I]t would make little sense to go through the rigamarole of proving information was truly a trade secret if a plaintiff could alternatively plead claims with less burdensome requirements of proof." *Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322, 1345 (N.D. Ga. 2007). Thus, the issue for the Court is whether Amerair's common law claims are "clearly based upon a trade secret." *Penalty Kick Mgmt. Ltd. v. Coca Cola Co.*, 318 F.3d 1284, 1297 n.13, 1298 (11th Cir. 2003).

### b.   Amerair's State Law Tort Claims Are Based on Trade Secrets or Like Information.

A "trade secret" is defined as:

> [I]nformation, without regard to form, including, but not limited to, technical or nontechnical data, a formula, a pattern, a compilation, a program, a device, a method, a technique, a drawing, a process, financial data, financial plans, product plans, or a list of actual or potential customers or suppliers which is not commonly known by or available to the public and which information:
>
> (A)   Derives economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

O.C.G.A. § 10–1–761(4). This broad standard boils down to a fact question that hangs on three elements: Information is a trade secret if it (1) is information that is not commonly known by or available to the public, (2) derives economic value from not being generally known to or ascertainable by proper means, and (3) was subject to reasonable efforts to maintain its secrecy. *EarthCam, Inc. v. OxBlue Corp.*, 49 F. Supp. 3d 1210, 1225 (N.D. Ga. 2014) (citing *Capital Asset Research Corp. v. Finnegan*, 160 F.3d 683, 685 (11th Cir. 1998)), *aff'd*, 703 F. App'x 803 (11th Cir. 2017).

Here, these three elements are clearly met, and Amerair's disputed information constitutes trade secrets as a matter of law. In Amerair's Amended Complaint, it describes the subject information as "valuable, private, confidential, competitive, business information, the compromise of which is likely to cause damages and financial loss to [Amerair]."[66] Thus, it concedes that the information is not commonly known and is imbued with economic value. Further, Amerair asserts that Raftis "exceeded his authorization in taking" the information, "exercised wrongful dominion" over it, and did so notwithstanding notice that his access to the information had been revoked.[67] These contentions demonstrate Amerair's belief that it took reasonable efforts to maintain the secrecy of the information Raftis accessed. *See EarthCam, Inc.*, 49 F. Supp. 3d at 1225.

Moreover, even if Amerair's pleading and arguments did not betray its position that the disputed information does not constitute trade secrets, Georgia law is clear that the at-issue proprietary information need not qualify as a trade secret for a claim to be preempted by the GTSA. *Robbins v. Supermarket Equip. Sales, LLC*, 290 Ga. 462, 465 (2012) ("For the GTSA to maintain its exclusiveness, a plaintiff cannot be allowed to plead a lesser and alternate theory of restitution

---

[66]   ECF 17, ¶¶ 29, 31.

[67]   ECF 105, at 8–10.

simply because the information does not qualify as a trade secret under the act."). Rather, "the key inquiry is whether the same factual allegations of misappropriation [that would support a GTSA claim] are being used to obtain relief outside the GTSA." *Id.* at 466–67.

Here, each of Amerair's claims revolves around one theory of the case: Raftis took its valuable, private, confidential, competitive, business information to gain an unfair advantage for IAC in the SDI Sinton project bid and ultimately win the contract for IAC. However Amerair labels the disputed information, it is clear that each of Amerair's state law tort claims is premised on Raftis's alleged misappropriation of information that falls squarely within the type of intangible information that may be protected as a trade secret.

### c.   Amerair's State Law Tort Claims Are Preempted by the GTSA.

This Court need not tread its own path in finding that the GTSA preempts state law tort claims like those asserted here. Several other courts have found that the GTSA preempts Georgia common law conversion claims. *See, e.g.*, *Penalty Kick Mgmt. Ltd.*, 318 F.3d at 1297–98 (affirming the district court's grant of summary judgment on the plaintiff's conversion and other state law tort claims as preempted by the GTSA); *B & F System, Inc. v. LeBlanc*, 7:07-CV-192 (HL), 2011 WL 4103576, at *27 (M.D. Ga. 2011) (finding that the plaintiff's conversion claim was

preempted by the GTSA because it involved misappropriation of proprietary information); *Opteum Fin. Servs.*, 406 F. Supp. 2d at 1381 (recognizing GTSA preemption where the plaintiff's "claims for conversion and civil theft are based on its right to possession of the . . . files and defendants' intentional copying, taking, and misappropriating [of the] plaintiff's . . . files.").

Amerair's conversion claim is based on Raftis's alleged misappropriation of its "property and specifically [its] valuable, private, confidential, competitive[ ] business information,"[68] not "separate conduct—such as the misappropriation of physical property . . . respecting something other than proprietary information." *Diamond Power*, 540 F. Supp. 2d at 1345. *Cf. Tronitec, Inc. v. Shealy*, 249 Ga. App. 442, 446 (2001) (holding that conversion and theft claims related to the defendant's alleged taking of a personal computer were not preempted by the GTSA because the plaintiff's computer was personal property and not a trade secret), *overruled on other grounds by Williams General Corp. v. Stone*, 279 Ga. 428 (2005). So, Amerair's claim for conversion is preempted by the GTSA.

Likewise with respect to Amerair's tortious interference claim, which alleges that Raftis's alleged misappropriation of Amerair's emails "induced and

---

68   ECF 17, ¶¶ 33–34.

caused [SDI] to cease dealings with [Amerair], fail to enter an anticipated contract with [Amerair] . . . and to cease or curtail communications with [Amerair]."[69] Since Amerair's theory is that these misappropriated emails contained valuable, private, confidential, competitive, business information, its claim for tortious interference with respect to those misappropriated emails is preempted by the GTSA. *See Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1352 (N.D. Ga. 2017) (finding the plaintiff's tortious interference claim was preempted by the GTSA as a matter of law and dismissing it); *see also Diamond Power Int'l. Inc.*, 540 F. Supp. 2d at 1347 (holding the plaintiff's tortious interference claims were superseded by the GTSA because the plaintiff relied on the same conduct and injury in support of its interference claims as the conduct necessary to prove its trade-secrets claims).

Amerair counters Raftis's preemption argument by insisting that none of Raftis's authorities "finds preemption of either a CFAA claim or a [GCPSA] claim."[70] Raftis does not argue that Amerair's federal CFAA claim is preempted by Georgia's trade secrets statute, so the Court need not address that issue. However, Amerair misreads Raftis's authorities with respect to the GCPSA. Following the same rationale this Court and others have employed to determine

---

[69]   ECF 17, ¶ 37.

[70]   ECF 105, at 10.

that the GTSA preempts other state tort law claims premised on allegations of misappropriation of confidential information, courts have likewise held that the GCPSA is preempted by the GTSA. *E.g.*, *Agilysys, Inc.*, 258 F. Supp. 3d at 1349 (dismissing the plaintiff's GCSPA claim as preempted by the GTSA because it was based on allegations of misappropriation of confidential information); *RLI Ins. Co. v. Banks*, No. 1:14-CV-1108-TWT, 2015 WL 400540, at *2 (N.D. Ga. Jan. 28, 2015) (same); *Earthcam, Inc.*, 2012 WL 12836518, at *11 (same).

Amerair's Amended Complaint alleges that Raftis violated the GCSPA "by unauthorized[ly] access[ing] and obtaining, and by . . . delet[ing][ ] . . . Plaintiff's valuable, private, confidential, competitive[ ] business information."[71] The Court finds that Amerair relies on the same facts in support of its GCSPA claim as each of its other preempted claims. Thus, its GCSPA claim is likewise preempted.

Because the GTSA preempts each of Amerair's state law tort claims, they are precluded as a matter of law. With respect to these claims, Raftis's motion for summary judgment is granted. Though it is not vicariously liable for any of Amerair's causes of action for the reasons discussed above, IAC is likewise entitled to summary judgment as to each of Amerair's preempted state law tort claims on

---

[71]   ECF 17, ¶ 31.

this additional ground. Amerair's motion for summary judgment is denied as to its claims under the GCSPA and for conversion.

## B.   Fictitious-Party Pleading

Only Amerair's claims against the fictitious parties remain. While no party has raised this issue, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (citing *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997)). There is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be, 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber,* 951 F.2d 1210, 1215-16 (11th Cir. 1992)). But that exception does not apply in this case.

Amerair names John Does 1–8 in its Amended Complaint.[72] However, Amerair did not describe them in any detail, and simply noted that it "continues to diligently attempted [sic] to discover the identities of John Does 1–8 so they can be named as defendants, but . . . has been unable to do so."[73] Since it filed its Amended Complaint, Amerair has neither moved the Court for leave to amend its complaint to add new parties nor made any effort to describe John Does 1-8 in any

---

[72]   ECF 17.

[73]   *Id.* ¶ 4.

greater detail. Amerair's window to cure its impermissible fictitious-party pleading has closed.

### C.    Remaining Non-Dispositive Motions

Also pending before the Court are IAC's Motion to Exclude the Opinion Testimony of Eric Shirk[74] and Motion to Strike.[75] Because the Court grants IAC's summary judgment motion, these motions are denied as moot.

## III.   Conclusion

IAC's and Raftis's summary judgment motions [ECF 92; ECF 100] are **GRANTED**. Amerair's summary judgment motion [ECF 94] is **DENIED**. The remaining non-dispositive motions [ECF 101; ECF 107] are **DENIED AS MOOT**.

The Clerk is **DIRECTED** to enter judgment against Amerair and close this case.

**SO ORDERED** this 30th day of March, 2022.

Steven D. Grimberg
United States District Court Judge

---

[74]   ECF 101.

[75]   ECF 107.